We have four argued cases this morning. The first is number 24-1765, Bamboa-Avila v. HHS. Mr. Webb. This is the court. I want to first thank the court and the court staff for making accommodations for my difficulty hearing. That way I hope I will hear your questions a bit better than I have in the past. This appeal presents the question of whether the special master required Gamboa to provide objective confirmation for his medical theory for medical literature specific to Guillain Barre syndrome. The special master clearly required Gamboa to provide objective confirmation of testimony supporting his medical theory. In his analysis of Gamboa's medical theory, the special master wrote that the testimony of Gamboa's expert witness was speculative because a key element of his medical theory was, quote, not accepted overall by medical science specific to Guillain Barre syndrome and, quote, not was not addressed in reputable publications and studies. So suppose I were to read that as saying not that medical literature confirmation was required, but that the absence of medical literature confirmation means that the theory is less believable. Is that permissible under our cases? It's not permissible under ALFIN because that's You can't take it into account at all under ALFIN? Because that is a higher, you cannot, the special master can't say that testimony that is not confirmed by objective medical literature or acceptance is not persuasive or not acceptable or not credible because that is a higher standard under what ALFIN set. It basically says that ALFIN says that medical testimony alone is sufficient and if you require objective confirmation, it is essentially starting from a position that the vaccine probably didn't cause the injury or maybe not probably, but you start from a position that unless very strong evidence is presented, we're not going to find vaccine causation. It's a higher standard and that is essentially, that was the essence of the ALFIN decision, that requiring objective confirmation requires more of the petitioner. It is a hard line to explain or to draw, but the critical point is that you start, the finder of fact is supposed to start neutral without an opinion whether or not the critical fact, in this case medical vaccine causation, the petitioner's medical theory, was proven, whether it was established or not established and you can't start with the premise that well, only evidence that has objective confirmation can be credible because that means the petitioner starts at a disadvantage which is inconsistent with the vaccine act and the preponderance of evidence established by the vaccine act and that was the critical holding in the ALFIN case. And I have quoted both in my initial argument and in my brief, this paragraph from the special master, but I do want to say it again because it's critical, this is what the special master wrote. What page? What page of the joint appendix? This is on page 35 of the appendix, 35 of the special master's decision. It's 35 of the special master's appendix, page 36. Which paragraph are you looking at? It's the second paragraph. It begins, and this is the whole first couple sentences, next, Dr. Steinman proposes an antigenic autoimmune self-target for GBS pathogenesis, polar head groups containing phospholipid components that is not accepted overall by medical science specific to GBS, let alone addressed in reputable publications or studies. In effect, if Dr. Steinman is correct, he has made a major discovery about GBS that others in the field more well-versed in a specific study of peripheral neuropathies have fully missed. It is simply speculative to propose that GBS could be mediated by an attack on this target, etc. The point here is that the special master found Dr. Steinman's testimony unpersuasive or inadequate or deficient because there was not objective confirmation in reputable publications or studies or general acceptance in the medical science specific to GBS. If you look at the Alton decision, that is almost exactly word for word what the disputed Stevens test required in Alton, or in other words, what the special master, why the special master denied compensation in Alton. One of the things I'm struggling with in this case is the very deferential standard of review that we owe to the fact finder's decision making here, right? And I'm not sure that I'm seeing a heightened burden of proof, as you say, and so I'm looking at the fact findings and trying to determine whether they're implausible and that makes it difficult in this case. And what is your response to that? It is difficult to distinguish between just looking at and requiring an issue. But I think the critical point here is the standard against which the special master measured the evidence. It wasn't a weighing of the evidence, it was a measuring of the evidence up against what he expected in order to be preponderance. In other words, he believed that evidence in the absence of evidence objectively confirming Dr. Steinman's medical theory, it was speculative. It wasn't persuasive because it was speculative. In other words, lack of confirmation denied Dr. Steinman's testimony, the credibility he needed to satisfy what the special master believed was the standard. Let's suppose that I disagree with you as to the reading of the special master's decision. I read the special master as saying, well, yes, you could support a vaccine claim successfully without medical literature supporting the theory, but the absence of medical literature weakens the weight of the expert's testimony. Let's assume that I read the special master as saying that. Is that contrary to Althan? I think the point is, I'm trying to ask that clearly here. I mean, I'll say if you conclude that the special master did not require objective confirmation, then we lose. Now, the point I'm trying to make is that the specific holding of Althan was that objective confirmation could not be required. And so it's not, I guess, I'm trying to go back. The special master talks about the fact that there's more evidence for influenza vaccine. And that evidence includes objective confirmation, general acceptance, or at least widespread acceptance in the medical community specific to GBS. But the fact that there is more evidence on a different theory of causation doesn't mean that only theories of medical theories that reach that level, the flu GBS level, are sufficient. The question is, what kind of evidence is sufficient? And he said it's not sufficient unless there's objective confirmation. So he can look at the medical literature. What kind of evidence do you think would be sufficient? I mean, we have, of course, we've said in cases that, you know, no, you know, objective confirmation evidence is required, or no medical literature is necessarily required. But we've also at the same time said that what is required for Althan Pronghuan is some kind of reputable scientific or medical explanation. And I think we've also said there needs to be some indicia of reliability to support your expert's position. And so there has to be something more than your expert asserting a position, right? I think the special master absolutely can require that there be reputable science behind the medical theory. And that is the, in that he certainly can and should look at the medical literature submitted to determine whether special master or Dr. Steinman's medical theory is founded in reputable science. And the context of this case, that means, and whether he used a methodology in coming to his conclusions that is founded in reputable science. And in this case, the special master acknowledged that that existed. He said that theory of molecular mimicry on which Dr. Steinman based his medical theory was widely accepted in science and in the program. And that provided a foundation that the special master acknowledged was there. And he, throughout the two or three pages that discussed the critical conclusions on causation, acknowledged that the methodology of identifying a substance in the vaccine and a molecular mimic, or a molecularly similar substance in the peripheral nervous system was an accepted way of evaluating the likely causal relationship between an exposure and GBS. And he pointed both to the context of how medical science determined that the C. Jejani bacteria causes GBS through molecular mimicry and how the medical science and the vaccines can cause GBS through molecular mimicry. And I think what I'm saying is that the inquiry should be whether not focused on the conclusion that somewhere there's some kind of medical confirmation specific to Dr. Steinman's conclusion concerning the causal relationship, but whether there is sound science in the methodology. I was just going to say, do you think that a special master could never look at how things were shown, for example, with respect to the flu vaccine and GBS and compare that and say, you know, give a different weight to the evidence here because it doesn't arise to the level or nearly to the level that relates to the flu vaccine and mimicry, the theory of mimicry with respect to that and GBS? I don't think that the special master should use, I mean, basically what I think, I think I understand your question is that, I think this is an answer to it, that I don't think it's appropriate for the special master to say that in another case on another, involving another vaccine, the evidence was at this level. And only evidence at that level would be sufficient to persuade me. But what if they don't say only evidence at this level? Instead, the question is, well, that helps me understand how much weight to give this or how this compares. I think that it's appropriate to consider evidence in a specific record about how the determination of flu vaccine and GBS was arrived at and say, here's the evidence that existed in that context. In other words, I think that informs the question of whether the petitioner's theoretical theory is founded in sound science. It informs the question of whether it's legitimate, not junk science. But I think it's an error to say that you have to have achieved that same level in order to win the case. I think that the critical point is that the special master found Dr. Steinman's testimony speculative because he found there wasn't objective confirmation. There was that, if you will, causal relationship between the absence of confirmation and why he denied compensation that makes his decision something that you should reverse. Okay, we'll give you two minutes for rebuttal. Thank you, Mr. Webb. Mr. Sachs? Thank you, Your Honor. May it please the court. Petitioner advances one allegation. Before we get to this medical literature confirmation issue, there's something extremely troubling going on here. And if you look at page 42 of the appendix, the chief special master here said if this case had come before another special master, it would have come out differently. And he says it's not explained by different facts in different cases. He said this kind of case is decided by me one way and by other special masters another way. That's very, very troubling because it makes it seem as though the luck of the draw is going to determine the outcome of the case. What mechanism is there before the special masters or in the claims court to make sure that this doesn't happen? It just doesn't seem right. I agree, Your Honor. There is some troubling, there's a troubling notion to the point that different special masters can decide the same vaccine injury cases differently, but at the same time, reasonable minds can disagree. It's well established that special masters are not bound by special master here saying that's not the situation. He's saying on identical facts, this case would come out differently depending on which special master heard it, right? I think it's close to that. I think they're same, much of the same medical literature. I think in some of the other cases that were decided in favor for petitioners, there were similar expert lineups. In this case, there was Petitioner's expert, Dr. Steinman, and others, there was Respondent's expert, Dr. Witten. But at the same time, I think, Your Honor, I think the chief special master is somewhat troubled by the fact that these come out differently and expressly says that he wish it didn't, but at the end of the day, he thinks that the other special masters might be inadvertently lowering that burden, and we'd agree with the chief special master there. There is, to get to Judge Stoll's question, seems to be some importation of the flu GBS framework into a separate vaccine, Prevnar GBS cases, that he's carefully looking at this medical literature and- If I could just follow up on Judge Dyke's question. Is there no mechanism in order to get all the special masters in line to standardize their practice with respect to this non-table injury? It's hard for me to imagine, just because- I would think the government would also be equally interested in having consistent outcomes in these cases, rather than this luck of the draw question, where you're playing roulette and if you get the right special master, you get one outcome, but if you draw the wrong straw, then you're out of luck. Somebody gets $500,000, another person gets $0 on the exact same facts. Well, I'd point out, respectfully and honorably, not every case has the exact same facts. Let's just assume that's what is going on. Okay, so is there or is there not some kind of mechanism for a standardization of practice among the special masters for this particular issue? It's hard for me to imagine a mechanism because so much of this comes down to fact-finding, and as Judge Stoll was getting at, this court and the Court of Federal Claims applies a highly deferential arbitrary or capricious standard of review. At the end of the day, the special masters are weighing the evidence. This case comes down to factual determinations, not a legal standard, not a heightened- We understand that, but the problem is the same facts, different results. That's not tolerable, and the question is, isn't there some mechanism for bringing consistency to what the special masters are doing? I believe that. I think we're looking at every vaccine-injury combo as presenting the same facts, and that's, I respectfully, that's just, it's not the case, and there are different medical, there's different medical literature submitted in each of these cases, there are different expert lineups, different special masters find- Okay. Except our premise. Okay. It seems to be supported explicitly by the special master in this case. Except the premise, on identical facts, the cases are coming out differently, and it all depends on which special master you end up with. That's intolerable, right? It's less, it's not ideal, Your Honor, yes. As far as a mechanism that this court could implement to change that, I'm sorry, I'm struggling to find a legal rule that could be implemented to tell every special master to treat a hepatitis B transverse myelitis case the same, or a Prevnar GBS case the same. All right. All right, why don't you go ahead. Well, okay. To petitioner's argument here, the chief special master did not elevate the burden by requiring objective confirmation of his causation theory in the scientific medical literature. As Judge Tapp observed below, we agree this is a factual disagreement disguised as a legal challenge. The special master did not demand scientific certainty or universal acceptance. He expressly stated he was not applying such a heightened burden. Instead, he fulfilled his role as a fact finder, carefully evaluating the reliability of petitioner's theory, weighing it against competing expert testimony. He said he wasn't doing that. He wasn't making that requirement. But the question is, functionally, was he basically, in practice, creating such a requirement? I mean, it's unclear to me what else the chief special master would have needed to have satisfied him that there was this causal connection in the absence of confirmatory medical literature. Can you identify what is that something else that would have satisfied this chief special master? Yes, Your Honor. The evidence, the medical literature that was submitted, it's not that he was requiring medical literature per se, which would be in violation of health. And I agree with what one of the readings that Judge Dyke might have given, that the absence of evidence within, absence of the connection within the evidence that was submitted was probative. The fact it made it unreliable, unpersuasive, it wasn't, petitioner's theory wasn't supported by reputations. I understand that. But do you understand the mystery I have in reading his opinion? I'm trying to figure out what else would have satisfied the special master, but for confirmatory medical literature. Right. Well, to be clear, we don't agree that he required the- I understand that, but then what is it? What is it that would have been good enough? Well, if you look at the various other components of petitioner's theory, which this clause in the decision at Appendix 36 doesn't speak to. This speaks to one of the three prongs, essentially, that was underlying petitioner's theory of the target of the autoimmune attack in GBS. So, I mean, that ignores the first component of what component of the vaccine is supposed to trigger the supposed autoantibodies. And there was separate literature and separate opinion presented on that, which he found didn't support Dr. Steinman's theory, and in fact, undermined it at several, in several instances. He found respondents expert, Dr. Witten persuasively rebutted those points on all the three or more prongs of the theory. So it wasn't, I mean, if you look at the absence of support in the medical literature that petitioner provided, showing that that component of the nerve, the peripheral nerve is attacked. Yes. I mean, he said the articles you submitted don't say that. And in fact, there's a breadth of literature in GBS that associates the target as gangliosides, right? Not the target that was alleged here. So I'm sorry, am I someone answering your question? I think what Judge Chin is saying is if a special master gives lip service to the Alton requirement, but in reality is requiring medical literature, that would seem to be a problem, right? I'm not sure I understand. I don't understand how he's giving lip service to Alton. Well, he's saying, recognizing the appropriate standard, but in effect requiring medical literature, because that's the only thing that can satisfy. I respectfully disagree. Looking at the literature and the evidence that's submitted, and he's weighing it. Except Judge Dyke's premise for a second. Okay. If a special master were to approach the issue in that manner, you would agree that would be a problem, right? If any special master required medical literature, that is in violation of Alton. Even though the special master announced that that's not what he was doing. But if you read the special master's analysis, you could see in effect that is in fact what the special master was requiring. You would agree that would be a legal defect in the decision, right? Yes, Your Honor. But I don't obviously accept that that's what happened here, of course. Okay. Thank you, Your Honor. We ask that this court affirm the decision's flow. Okay. Thank you. Mr. Webb, you have two minutes. Did I use all my time left? No, I gave you two minutes for a rebuttal. Well, thank you so much. Next time I'll figure out better where to locate the captioning device. It's hard with the court asking questions. We tend to eat up all your time. I think I'd like to answer the question that you started with, Mr. Sacks. The inconsistency is absolutely there. And the Previnard GBS cases has never been more obvious. If you draw the right special master, you will win. And if you draw the wrong special master, you will lose. And I believe that the reason why you will lose with those special masters is because they require objective confirmation. They require higher standards. They expect to see the kind of evidence that proves that flu vaccine causes GBS in order to win a case involving a far less common and less studied issue. So the only way to increase the likelihood of some degree of consistency is to set objective criteria for what a special master can and cannot require. To specify, in this case, that he can't require objective confirmation. And that's the reason why we lost. It's the reason why other people are losing with special master, two special master go courts, and with one other special master. Maybe two, I don't know. Most of the special masters have found that the theory we relied upon is sufficient. And going back to what I was trying to argue before, in civil litigation, you assure that you have a neutral fact finder at the beginning of the case by either a jury of people who have never been exposed to a question, like whether the vaccine caused an injury, or a judge that this is the first time he's looked at the question, if it's not a jury. In a program like this, where you have special masters that have spent a decade or more hearing these cases, it's very hard to assure that they haven't developed a bias. When you enter a court, if they've already decided two or three cases of the same sort. It is a fact found issue in the end, is it not? I mean, isn't it possible for two reasonable people to examine a very fact-bound scientific medical theory, and come to opposite conclusions where one reasonable fact finder concludes that the proposed theory is too speculative, whereas the other reasonable fact finder concludes the theory is strong enough? Certainly, that's entirely possible. The question is, when you look at the analysis, whether the analysis was flawed by one or the other, that they required too little or too much evidence. And that's why this isn't about fact finding. It's about what the standard was required of them. How high we had to jump? How high was the hurdle? And the hurdle here was higher in performance of the evidence, and that's clearly explained in the Alton case. Thank you very much. Well, I have one more question. Okay. In district court, where you have similar cases, for example, if you had a fire that was alleged to have killed people, if the victims' estates sue in district court, there's a related case rule. All the cases involving that fire would go to a single judge. Is there a related case rule with the special masters, or do they not follow that practice? I'm not sure I understood that question. Try again, please. Is there a related case rule with the special masters so that related cases are given to the same special master? There is no such rule in practice that has been done. Prior cases in the program were gathered together and tried together, or the same special masters hearing the same cases. But that has not been followed of late. And why? Do you know why? There's not a specific rule. The why in this case is because I don't know why, I guess. I have no other than that the special masters are overwhelmed, and they didn't see this one coming. They had what they call an omnibus proceeding with the autism cases because there were thousands of those. Before that, they had a similar mini-omnibus hearing in the context of hepatitis B vaccine and neurologic disorders like GBS and stress-versus-myelitis and MS. They've tried three test cases before a single special master. She decided those cases, and then she came back and addressed similar issues that came up in other cases. So that was the practice 10, 15 years ago. It hasn't been the practice since the omnibus autism cases. They did a similar process with arthritis after rubella vaccine, but it hasn't been done. This problem is actually aggravated by the case of different decisions from different special masters. In this case, the case was before a special master. They would likely have ruled for the petitioner, but she was overwhelmed in cases. She was slow to decide cases. Chief Special Master Corcoran, in an effort to expedite the resolution of cases, a laudable goal, reassigned the case to himself. So I went from a special master who was likely to have ruled for me to a special master who was likely to rule against me, and I knew that before the case ever got presented to the Chief Special Master. It's deeply concerning. I don't know that consistency is possible, but you shouldn't roll the dice, and it shouldn't be the determinative factor in whether your client who has a significant disability is compensated or not. And I think it can be corrected by recognizing the standard that you set and the decisions of this court, specifically Alfred and Caposano, do, in fact, mean something about the level of proof requirement should not be elevated beyond the preponderance evidence. And we have to be careful about beyond that. Okay. Thank you, Mr. Webb. Thank you, counsel.